## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE ESTATE OF ANTONIO ALMANZAR** | : | **CIVIL ACTION** |
| **PEREZ by Administratrix Biany Moronta** | : | |
| **Plaintiff** | : | **NO. 23-CV-** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

A.   Introduction

This is a §1983 civil rights action brought by the Plaintiff, the estate of Antonio Almanzar Perez, a man who died while in police custody on June 23, 2021, by his daughter and administratrix of his estate, Biany Moronta.  Ancillary state claims for Wrongful Death and Survival are also brought.

B.   Jurisdiction/Venue/Jury

Venue is proper under 28 U.S.C. §1391.  Jurisdiction is proper under 42 U.S.C. §1983.

C. Factual background.

1.  Plaintiff, The Estate of Antonio Almanzar Perez, is a decedent's estate administered by the decedent's daughter, Biany Moronta.
2.  The City of Philadelphia is a municipality in the Commonwealth of Pennsylvania, which controls, operates, manages, and directs the Philadelphia Police Department pursuant to the Home Rule Charter of 1951.
3.  On June 22, 2021, Antonio Almanzar Perez, Plaintiff's Decedent, was arrested in the Kensington neighborhood of Philadelphia.
4.  Almanzar Perez was a 68 year old man with a history of drug abuse.
5.  Almanzar Perez had one leg, the result of being hit by a bus a few years before, and walked with crutches as a result.
6.  He was elderly beyond his years, obviously fragile, and not a threat to anyone but himself.

7. He was without identification, but his physical condition and appearance, if anything, should have cried out for special attention.

8. He was taken to the Roundhouse, the now-former police headquarters at 7th and Race Streets, where he was placed in a jail cell with a cellmate.

9. At some point in the evening, he began vomiting profusely and moaning in pain.

10. His cellmate reported yelling for guards for help for hours, because of his concern for Mr. Perez's condition.

11. No help arrived, and the vomiting and moans continued until at some point in the night Almanzar Perez died.

12. On June 23, 2021, when the cell was opened for its occupants to be taken to a preliminary arraignment, Antonio Almanzar Perez was found dead.

13. An autopsy revealed a cause of death to be most likely multiple drug intoxication, which was known, or should have been known, by the arresting officers at the time of his arrest.

14. Pursuant to Philadelphia Police Directive 7.8-1, every person taken into custody by the Philadelphia Police Custody is required to be given a "quick medical evaluation" upon their arrest, and a medical checklist completed by the officer. See Philadelphia Police Directive 7.8, attached hereto as Exhibit "A."

15. Detainees who appear to be under the influence of drugs are required to be placed in a holding cell, with inspection of them made every ten minutes. *Id.*

16. Philadelphia Police Directive 5.6 was also applicable—it indicates that anyone intoxicated and in a "semi-conscious" state, indicating "incompletely conscious, imperfectly aware or responsive (indicating the inability to clearly and effectively communicate)," should be brought immediately to the hospital for a medical evaluation. Police Directive 5.6 is attached hereto as Exhibit "B."

17. Plaintiff's decedent lost his life during the several hours of deliberate indifference by the Philadelphia Police Department while his cellmate was yelling for help because Almanzar Perez was continuously vomiting and moaning in pain.

18. His death was discovered by his family when his daughter, the administratrix bringing this suit, began placing missing posters throughout Kensington, as she had not heard from him, and the Police Department called her and asked her to identify his body.

## COUNT I
### FEDERAL CAUSE OF ACTION: 42 U.S.C.§ 1983 AND 42 U.S.C. § 1988
### Plaintiff Estate of Almanzar Perez v. City of Philadelphia

23. Plaintiff Estate of Almanzar Perez incorporates its averments 1-13

24. As a direct and proximate result of the actions of the Defendant's agents and employees, Plaintiff was forced to suffer pain, nausea, vomiting, organ failure, and eventually death, thereby intentionally depriving him of his rights, privileges and immunities in violation of the, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, to be free from cruel and unusual punishments, and to not to be deprived of his life without due process and equal protection under the law.

25. As a direct and proximate cause of the actions of Defendant's agents and employees, Plaintiff suffered the following injury and damages:

    a. Violation of his constitutional rights, privileges and immunities under the Fifth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, his right to be free from cruel and unusual punishment, and to due process and equal protection under the law;

    b. . Physical and psychological pain.

    c. Death.

26. The Supreme Court of the United States held in *Estelle v. Gamble*, 429 U.S. 97 (1975) that withholding of medical care from a prisoner constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Constitution.

27. This has been upheld numerous times, in *Wilson v. Seiter*, 501 U.S. 294 (1991) (deliberate indifference to Plaintiff's medical conditions sufficient to plead cruel and unusual punishment); *Helling v. McKinney*, 509 U.S. 25 (1993) (deliberate indifference to environmental conditions sufficient to plead cruel and unusual punishment); *Farmer v. Warren*, 511 U.S. 825 (1994)

28. Such a claim is properly made when allegations are set forth of (1) a subjective showing of deliberate indifference to serious medical needs and (2) an objective showing that the needs were indeed serious. *Pearson v. Prison Health Service*, 850 F.2d 526, 534 (3d Cir. 2017)

29. This claim is thus properly presented to the Court, as the cellmate's repeated calls for the guard meet the subjective part of the test, and the death of Plaintiff's decedent meets the objective part of the test.

30. Plaintiff requests punitive damages due to the recklessness of the actions of the Defendant's agents and employees.

## COUNT II

### FEDERAL CAUSE OF ACTION: 42 U.S.C. § 1983 AND 42 U.S.C. §1988

31. Plaintiff Estate of Almanzar Perez hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

32. As a direct and proximate result of the actions of the Defendant's agents and employees, Plaintiff was forced to suffer pain, nausea, vomiting, organ failure, and eventually death, thereby intentionally depriving him of his rights, privileges and immunities in violation of the, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, to be free from cruel and unusual punishments, and to not to be deprived of his life without due process and equal protection under the law.

33. Defendant, City of Philadelphia and assorted other people as a matter of policy or practice, has, with deliberate indifference to the rights of its citizens, including Plaintiff, failed to:

a. adequately hire, discipline, train, supervise and/or otherwise direct employees, including concerning the rights of persons;

b. establish a system which properly identifies, reports and/or investigates instances of improper conduct by its employees in this case; and

c. adequately sanction and/or discipline its employees, for violations of the rights of persons, hereby causing Defendant's agents and employees, in this case, to engage in the unlawful conduct described herein.

34. Defendants have intentionally with deliberate indifference to the rights of persons, such as Plaintiff, failed to establish a system which properly identifies, reports and/or investigates instances of improper conduct, and thereby, permitted, encouraged and tolerated a pattern and practice of employees, officials, and agents in abusing their powers and depriving people arrested, not yet convicted of any charges or indeed, even charged in a court of law, from necessary medical care.

35. Defendants, as a matter of policy or practice, have, with deliberate indifferences to the rights of persons, such as Plaintiff, failed to adequately sanction and/or discipline its employees, officials, and agents for violations of the rights of individuals, thereby causing their agents and/or employees in this case to engage in the unlawful conduct described herein.

36. Defendants, as a matter of policy or practice, have, with deliberate indifference to the rights of persons, such as Plaintiff, failed to adequately sanction and/or discipline its employees, officials, and agents, including the Defendant's agents and employees in this case, who are aware of and conceal violations of the rights of citizens, thereby causing and encouraging Defendants in this case to engage in the unlawful conduct described herein.

37. During the COVID-19 pandemic, staffing dropped tremendously in both the Philadelphia Police Department and the Philadelphia Prison System.

38. The Philadelphia Police, budgeted for 6,380 officers, was in danger of dropping to less than 6,000 officers total, according to a press conference held by Chief Danielle Outlaw on the day that Plaintiff's decedent died, June 23, 2021.  (See Exhibit "C.")

39.  Lockups in police stations are patrolled by police officers, not by prison staff.  See Directive 7.8-3.

40.  However, an identical situation prevailed in the Philadelphia Prison system, wherein fewer and fewer prison guards were on duty, which eventually led to a Consent Decree before Judge Schiller, signed April 12, 2022, in *Remick v. City of Philadelphia*, 2:20-cv-01959, whereby more prison guards would be employed, and the City would "provide

adequate and timely medical and mental health treatment to all incarcerated persons." See Exhibit "D."

41.  In November of 2021, less than six months after Mr. Almazar Perez's death in police custody, Samantha Melamed of the Philadelphia Inquirer published an article in which she reported other people in custody reporting long waits for emergency medical conditions:  diabetic prisoners who reported 8-10 hours to get responses to emergency buttons in their cells if anyone responded at all; a prisoner who reported six weeks before he could get an examination of his broken hand. See Exhibit "E."

42.  By April of 2022, Ms. Melamed was reporting that the death rate in custody in Philadelphia was 29 people since March of 2020- fully 77% higher than the most recent nationally published jail mortality rate, despite having officially reported only 2 deaths. See Exhibit "F."

43.  It is clear that the pandemic, due to the reduction of staff due to illness, retirement, and attrition, and the difficulties of COVID-19 itself, the conditions of people in custody in the Philadelphia jail system had degraded considerably.

44.  However, there has been a long history of little or no consequences for Philadelphia Police officers, no matter what they have done or omitted to do.

45.  The failure of the City to adequately address misconduct by City of Philadelphia Police Officers was lamented by former City of Philadelphia Police Commissioner Charles H. Ramsey: "Philly is not a bad police department at all… But it will never realize its full potential as long as you have a system in place like this." (Philadelphia Inquirer, "Fired, Then Rehired" September 12, 2019.)

46.  The City failed not only in adequately disciplining these officers. Defendant City of Philadelphia has consistently failed to fire and/or has re-hired police officers accused of similar constitutional violations.

47.  The failure of the City to adequately address misconduct by City of Philadelphia Police Officers was highlighted by Internal Affairs Lt. Raymond Saggese, when he stated under oath at a deposition in 2016 that: "There's a lot of officers that are out there right now that I wish were off the force because they're criminals…And unfortunately, the legal aspects of our city and arbitration and union and all put these people back on the job…No matter how much I fight, scream, yell, beg and holler, they are still back on the job." (Philadelphia Inquirer, "How A Flawed System Hid A Philly Police Commander's Sexual Misconduct For 15 Years" December 5, 2019.)

48.  The failure of the City to adequately address misconduct by City of Philadelphia Police Officers was also addressed by Retired Police Chief Inspector, Anthony DiLacqua, who oversaw Internal Affairs from 2008 to 2010:  "He and his investigators had no say in how discipline was meted out…they were often dismayed when cops returned to the force after Internal Affairs had determined the officers committed serious offenses." (Philadelphia Inquirer, "Fired, Then Rehired" September 12, 2019.)

49. Defendant City of Philadelphia has, by the above described actions and omissions, deprived the Plaintiff of rights secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983.

50. All of the above violations were the result of specific decisions and/or acquiescence to a well settled custom and practice by policymakers for the City, including but not limited to Mayor Jim Kenney, Police Commissioner Danielle Outlaw, and City Controller Rebecca Rhynhart.  As such, the City is responsible for the violations of Plaintiffs' constitutional rights.

51. To the extent any of the above unconstitutional actions were not decided or authorized by City policymakers, all such actions were the result of decisions by City policymakers to delegate such decision making authority to the persons who did authorize and direct the unconstitutional conduct.

52. To the extent any of the individual officers who were employees or agents of the Defendant acted outside the authorization and direction of City policymakers or the persons to whom policymaking authority was delegated, the City is responsible for failing to properly train, supervise, and/or discipline the officers who so acted.  Given the city's poor history with regard to constitutional violations, its failures in this regard were with deliberate indifference to the risk of those constitutional violations.

53. Defendant City of Philadelphia has tolerated, encouraged and been deliberately indifferent to:

    a.   Failure to render medical aid to prisoners in its custody;

    b.   Failure to properly train police officers in identifying prisoners who are in need of medical or psychological attention.

    c.   Abuse of police powers, including malicious indifference to people who are under arrest and have not been convicted, or even indicted, of any crime;

    d.   Arresting and incarcerating citizens without probable cause with no intention of seeking criminal prosecutions;

    e    Psychologically and emotionally unfit persons serving as police officers and;

    f.   Failure of other police officers to prevent, deter, report, or take action against the unlawful conduct of police officers;

54 Defendant City of Philadelphia has tolerated, encouraged and been deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation, or discipline in the areas of:

    a.   The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

    b.   The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

    c.   The use of their status by police officers to employ unlawful arrests, malicious prosecutions, invocation of the Code of Silence and/or to achieve ends not reasonable or justifiably related to their duties as police officers;

    d.   The failure of police officers to follow established policies, procedures, directives, and instructions regarding the use of arrest powers under such circumstances as presented in this case; and

    e.   The refusal of police officers to report or provide information concerning the misconduct of other police officers.

55. Defendant City of Philadelphia is deliberately indifferent to the need to train and supervise police officers.

56 For example, in Police Directive 7.8-3, the training for police officers to be sufficiently trained as cell block attendants or Police Correctional Officers is described as a ten minute video for annual renewal of accreditation.  See Exhibit "A."

57. This is in comparison to the training for personnel in the Federal Bureau of Prisons, who are required to complete 16-40 hours of training annually. See https://www.bop.gov/jobs/hiring_process.jsp

58. Defendant City of Philadelphia has intentionally and with deliberate indifference to the rights of persons, such as Plaintiff, failed to establish a system which properly identifies, reports and/or investigates instances of improper conduct, and thereby permitted, encouraged and tolerated a pattern and practice of employees, officials, and agents, including Defendants in this case, in abusing their powers.

59. Defendant City of Philadelphia is deliberately indifferent to the need to discipline police officers as evident from the fact that the internal mechanism adopted by the Defendant City to insure appropriate oversight of police conduct, the Internal Affairs Division (IAD) of the Philadelphia Police Department, has long proven to be ineffective in imposing meaningful disciplinary and remedial actions, thereby allowing unlawful conduct to be repeated.

60. Defendant City of Philadelphia, as a matter of policy or practice, has, with deliberate indifference to the rights of persons such as Plaintiff, failed to adequately sanction and/or discipline its employees, officials, and agents, including Defendants in this case, for violations of the rights of individuals, thereby causing Defendants in this case to engage in the unlawful conduct described herein.

61. Defendant City of Philadelphia has failed to properly sanction and/or discipline its employees, officials, and agents who commit, are aware of and conceal and/or aid and

abet constitutional violations by other police officers, thereby encouraging police offers to violate the rights of citizens without fear of discipline.

62. As a direct and proximate cause of the actions of Defendants, individually and jointly, Plaintiff suffered the following injury and damages:

a. Violation of his constitutional rights, privileges and immunities under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; and in particular, his right to be free from cruel and unusual punishment, and to due process and equal protection under the law;

b. . Physical and psychological pain.

c. Death.

### COUNT III
### Wrongful Death
### 42 Pa.C.S. §8301

63. Plaintiff Estate of Almanzar Perez hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

64. At the time of the death of the decedent, Plaintiff's decedent was not married and he had three children.

65. His parents were deceased, and his children the only intestate heirs.

66. This action is being brought by Biany Moronta as the Administratrix of the Estate of Antonio Almazar Perez and as personal representative of the heirs of Antonio Almazar Perez, to wit Biany Moronta, Ariel Dominguez, and Elizar Lora.

67. The Plaintiff, Biany Moronta, was duly appointed the Administratrix of the Estate of Antonio Almazar Perez by the Register of Wills of Philadelphia County, Pennsylvania, on June 16, 2022 and she is bringing this action by virtue of the Act of 1855 P.L. 309, as amended, and Pennsylvania Rule of Civil Procedure 2202.

68. As a result of the aforesaid accident and the death of the decedent, his heirs, sustained a pecuniary loss for the following:

a. Funeral expenses.

c. Administration expenses necessitated by reasons of the injuries and resulting in death referred to above.

c. Counsel, guidance and society.

69. The decedent did not bring an action during his life for the injuries or damages enumerated above and no other action has been commenced against the Defendants on behalf of the decedent.

70. The conduct of the Defendant, the City of Philadelphia, through its agents and employees, in ignoring Plaintiff's decedents cries for medical aid were willful, wanton, reckless, grossly negligent, egregious and such that would shock one's conscience.

**COUNT IV**
**Survival**
**42 Pa.C.S. §8302**

71. Plaintiff Estate of Almanzar Perez hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

72. Because the Defendant knew or should have known, through its employees and agents that Plaintiff's decedent was in its custody and in need of medical assistance, and because it failed to monitor or review their conduct in patrolling the cellblock, its conduct or lack thereof showed a reckless indifference to the rights of the decedent and was negligent and reckless and was such as would shock one's conscience.

73. As a result of the injuries and the death sustained by the decedent as a result of the actions of Defendant's agents and employees in failing to respond to Plaintiff's decedent's cries for medical aid, the Plaintiff is entitled to recover for the following expenses and losses:

   a. Pain and suffering sustained by the decedent.

   b. Humiliation, embarrassment, emotional trauma, loss of life's pleasures.

**REQUESTED RELIEF**

74. As to Counts I and II, Plaintiff demands judgment under 42 U.S.C. §1983 and §1988 and requests damages in excess of $150,000, including punitive damages, against Defendant, plus costs of court and reasonable attorney's fees.

75. As to Counts III and IV, Plaintiff demands judgment under 42 Pa.C.S. §§8301 and 8302, and requests damages in excess of $150,000, including punitive damages, against Defendant, plus costs of court.

Respectfully submitted,

Lionel Artom-Ginzburg, Esquire
PA ID #88644
Evan Shingles, Esquire
PA ID #89118
The Franklin

834 Chestnut Street, Suite M206
Philadelphia, PA 19107
(215) 925-2915
lionel@artom-ginzburg.com
eshingles@shingleslaw.com

June 22, 2023