# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE ESTATE OF ANTONIO ALMANZAR PEREZ BY ADMINISTRATRIX BIANY MORONTA,** | : <br> : **CIVIL ACTION** <br> : No. 23-2407 <br> : |
| **Plaintiff,** | : |
| v. | : <br> : |
| **CITY OF PHILADELPHIA,** | : <br> : |
| **Defendant** | : <br> : |

# ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of Defendant the City of Philadelphia's Third Motion to Dismiss, it is **HEREBY ORDERED** that the Motion is **GRANTED** and that the Complaint is dismissed.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF ANTONIO ALMANZAR PEREZ BY ADMINISTRATRIX BIANY MORONTA, | CIVIL ACTION No. 23-2407 |
| Plaintiff, | |
| v. | |
| CITY OF PHILADELPHIA, | |
| Defendant | |

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant the City of Philadelphia hereby files this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, Defendant incorporates the attached Memorandum of Law. Defendant respectfully requests this Court dismiss the claims asserted against it.

Date:  July 23, 2023　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 /s/ Andrew F. Pomager
　　　　　　　　　　　　　　　　　　　　　Andrew F. Pomager
　　　　　　　　　　　　　　　　　　　　　Div. Deputy City Solicitor
　　　　　　　　　　　　　　　　　　　　　Pa. Attorney ID No. 324618
　　　　　　　　　　　　　　　　　　　　　City of Philadelphia Law Department
　　　　　　　　　　　　　　　　　　　　　1515 Arch Street, 14th Floor
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19102
　　　　　　　　　　　　　　　　　　　　　215-683-5446 (phone)
　　　　　　　　　　　　　　　　　　　　　215-683-5397 (fax)
　　　　　　　　　　　　　　　　　　　　　andrew.pomager@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF ANTONIO ALMANZAR PEREZ BY ADMINISTRATRIX BIANY MORONTA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA,<br><br>Defendant | CIVIL ACTION<br>No. 23-2407 |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

The Court should dismiss the Complaint brought by Plaintiff Biany Moronta, in her capacity as Administratrix of the Estate of Antonio Almanzar Perez, because she has only sued Defendant the City of Philadelphia which cannot be held liable under a theory of respondeat superior. Plaintiff's conclusory allegations, and her allegations concerning staffing issues at an entirely separate department of the City, and her allegations concerning discipline imposed by City officials but later reversed under state law against the wishes of the City, is insufficient to establish a municipal policy or custom—much less one that was the moving force behind Mr. Perez's death—to establish municipal liability against the City.

**I.  BACKGROUND**

On June 22, 2023, Plaintiff Biany Moronta, as the Administratrix of the Estate of Antonio Almanzar Perez, filed this § 1983 civil rights action against Defendant the City of Philadelphia. See Compl. (ECF No. 1). It arises from the overdose death of Moronta's father, Mr. Perez, in Philadelphia Police Department (PPD) sometime between June 22, 2021 and June 23, 2021. See

id. at ¶¶ 1–21. In Count I of the Complaint, Plaintiff alleges a claim under § 1983, and refers to violations of the Fifth, Eighth, and Fourteenth Amendments, the rights to be free from cruel and unusual punishments, to due process and equal protection under the law. See id. at ¶¶ 24–25. By reference to the more specific law that follows, however, it is clear Plaintiff is claiming a violation of his right to adequate medical care, properly analyzed under the Fourteenth Amendment.[1] See id. at ¶¶ 26–29.

As alleged in the Complaint, Mr. Perez was arrested on June 22, 2021. Id. at ¶ 3. He was 68 years old, had one leg and used crutches. Id. at ¶ 4-5. His "physical condition and appearance, if anything, should have cried out for special attention." Id. at ¶ 7. He was placed in a cell at PPD headquarters. Id. at ¶ 8. Mr. Perez was vomiting and moaning, and his cellmate yelled for guards "for hours," but no guards responded until the morning of June 23, 2021 when Perez was discovered deceased. Id. at ¶¶ 9–12.

The remainder of the Complaint is dedicated to an apparent assertion of municipal liability against the City in Count II. Plaintiff cites multiple PPD policies, including that detainees are to be given medical evaluations, are to be inspected every ten minutes if under the influence of drugs, and that semi-conscious individuals are to be taken to the hospital. Id. ¶¶ 14–16.

    1.  Conclusory & Boilerplate Allegations of City Policy "and/or" Custom

Plaintiff asserts a number of conclusory, general, and boilerplate, allegations concerning City policy, or, in the alternative, custom, regarding "the unlawful conduct described herein," or

---

[1] The Complaint and its caselaw suggest Plaintiff views this claim as arising under the Eighth Amendment. However, because the Complaint permits no reasonable inference Perez was a convicted prisoner—he was in fact a pretrial detainee—this claim can only be raised under the Fourteenth Amendment, which applies the same standard. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). Defendant assumes the Court would construe the Complaint as raising this claim under the Fourteenth Amendment.

"violations of constitutional rights" generally. See id. at ¶ 33–36. These include that the City fails to "adequately hire, discipline, train, supervise, and/or otherwise direct" employees, and "fail[s] to establish a system which properly identifies, reports and/or investigates instances of improper conduct." Id. Plaintiff further provides a litany of generalized acts or omissions the City is allegedly tolerant of or indifferent to, or "need[s] . . . more or different training, supervision, investigation, or discipline in the areas of." Id. at ¶ 53–54. These include generalizations such as, for example, "failure to render medical aid to prisoners," "abuse of police powers," and "failure of police officers to follow established policies." Id. They also includes generalizations with no relationship to the allegations in this case, such as, "[a]rresting and incarcerating citizens without probable cause with no intention of seeking criminal prosecutions; [p]sychologically and emotionally unfit persons serving as police officers," "use of their status by police officers to employe unlawful arrests, [and] malicious prosecutions." Id.

    2. <u>Non-Conclusory Allegations Purporting to Describe City Deficiencies in Its Disciplinary System</u>

Plaintiff then more specifically appears to allege a theory that PPD is understaffed. She alleges PPD was "in danger of dropping to less than 6,000 officers," from its budgeted staffing of 6,380; suggesting, in fact, that this 6% decrease from budgeted numbers had not occurred prior to Perez's death nor affected the detention unit where Perez was held. See id. at ¶ 38.  She points to apparent shortcomings at an entirely separate City department—the Philadelphia Department of Prisons—that she concedes had no involvement in Perez's detention. See id. at ¶ 39. She refers to two news articles characterizing the state of the Philadelphia Department of Prisons facilities, not the PPD facility at 7th and Race Streets where Mr. Perez was held. See id. at ¶¶

Plaintiff separately alleges that disciplinary deficiencies by the City are described in a September, 12, 2019 news articles. See id. ¶ 45 (citing William Bender & David Gambacorta,

3

Fired then Rehired, The Philadelphia Inquirer, Sept. 12, 2019, available at https://www.inquirer.com/news/a/philadelphia-police-problem-union-misconduct-secret-20190912.html). She points to a quote in this article by former Police Commissioner Charles Ramsey, that "Philly is not a bad police department at all... But it will never realize its full potential as long as you have a system in place like this." Id. at ¶ 45.

In fact, this article concerns 170 cases where a police officer was charged by internal affairs and had discipline imposed by the police department, but that discipline was appealed to binding arbitration. See Bender, at 1–2 (Ex. A)[2] (describing one instance as an example and referring to 170 arbitration opinions and settlements reviewed). Arbitration is the "system" former Commissioner Ramsey cited as holding back the department. Id. at 3. The article notes that "the arbitration records show that Philadelphia Police Department's Internal Affairs Division is capable, at times, of building thorough cases against officers . . . . Even those efforts, though, can end up inadequate in an arbitrator's eyes." Id. at 4. Plaintiff also omits what the article makes clear: that state law *requires* the City and the union settle disputes through arbitration. Id. at 8; Act Governing Collective Bargaining by Police or Firemen ("Act 111"), 43 Pa. Stat. §§ 217.1–217.10). The article describes a number of instances where a Police Commissioner took action to fire an officer for misconduct and where that decision was subsequently overturned by arbitration. See, e.g., Bender at 10. Plaintiff's allegations concerning the characterizations of concerns by an Internal Affairs Lieutenant and a Chief Inspector, are likewise specifically directed at the arbitration system. Compl. ¶ 47 (referring specifically to arbitration "put[ting]

---

[2] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. . . . Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Ben. Guar. Corp. v. White Concol. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993).

these people back on the job"); Compl. ¶ 48 (quoting a Chief Inspector from 2008-2010 who, in the same article as Commissioner Ramsey, is addressing the arbitration system).

It is therefore incorrect that the material quoted by Plaintiff indicated any of the quoted PPD employees were "lamenting" or "addressing" a "failure *of the City* to adequately address misconduct."

### 3. Non-Conclusory Allegation Purporting to Describe City Deficiency in Training

Plaintiff also briefly notes as "an example" of deficient training that "training for police officers to be sufficiently trained as cell block attendants . . . is described as a ten minute video for annual renewal of accreditation." Id. at ¶ 57. Plaintiff points out that this falls short of training for Federal Bureau of Prisons employees, who are required to complete 16-40 hours of training annually. Id. at ¶ 57. In fact, Plaintiff disregards the applicable directive's reference to "initial training" in addition to annual training. See PPD Dir. 7.8 at 25, 3(A), Pl.'s Compl., Ex. A. The Federal Bureau of Prisons, of course, "ensure[s] the security of federal prisons," i.e., operates the correctional facilities. See Federal Bureau of Prisons, About Us, https://www.bop.gov/about/agency/.

## II. ARGUMENT

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without stating a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." Anspach v. City of

5

Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. (quotation marks omitted).

### A. Plaintiff's Cumulative, Conclusory Allegations Concerning Generalized Deficiencies Fail to Plausibly Establish the Elements of a Monell Claim

A municipality cannot be held liable under § 1983 for its employees' constitutional torts by way of respondeat superior. McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Rather, under Monell, a municipality may be liable if the employee acted pursuant to a government policy or custom. Monell, 436 U.S. at 694.

In Wood v. Williams, the Third Circuit affirmed the dismissal of a Monell claim. 568 F. App'x 100, 102 (3d Cir. 2014). The plaintiff in Wood set forth a series of conclusory allegations that "simply paraphrase[d]" the elements of Monell liability. Id. at 103–04. The Court held that such "conclusory and general" averments were "insufficient" and "fail[ed] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." Id. at 104 (citations and quotation marks omitted).

Averments that "amount to a mere recitation of the . . . elements required to bring forth a Monell claim . . . are insufficient to survive a motion to dismiss." Butler v. City of Philadelphia, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013). In Torres v. City of Allentown, the Court found dismissal appropriate where the plaintiff's complaint alleged that Allentown "did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct, and that this policy/custom exhibited deliberate indifference to her constitutional rights." No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008). The court viewed the complaint as insufficient, in that it "lack[ed] any specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or

6

custom" and that it "fail[ed] to specifically demonstrate how the training programs for the police officers [were] inadequate." Id.

The non-specific allegations here are no better than the conclusory and general averments referred to in Wood, Butler, and Torres. First, the bulk of Plaintiff's allegations concerning City custom or policy are couched in generalized terms that say, at bottom, the City tolerates all manner of itemized misconduct, with no reference to any specific facts. The boilerplate nature of such allegations is apparent where, for example, Plaintiff complains of indifference to "incarcerating citizens without probable cause" or "psychologically and emotionally unfit persons serving as police officers." See, e.g. Compl. ¶ 53. Plaintiff has not alleged he was subject to false arrest, or that some undescribed psychological problem with any unidentified PPD employee contributed to Mr. Perez's harm. Similarly, Plaintiff alleges there is a "need for more or different training, supervision, investigation, or discipline," but, like the Torres plaintiff, she fails to specifically identify how the training and supervision were inadequate. Plaintiff simply falls short of the pleading standard with such baldly conclusory statements.

In addition to these patently conclusory allegations, it must be acknowledged that Plaintiff points to articles that do reference more specific misconduct by officers. For reasons discussed more thoroughly below, the misconduct actually raised in those articles could not plausibly support a finding of municipal liability here. But the Court need not analyze that far because, in fact, a careful reading of Plaintiff's allegations concerning the Inquirer articles demonstrates that she uses these in as much of a conclusory fashion as his boilerplate allegations, leaving the reader unclear on what, with any specificity, the custom in question or the deficiency in place is. Plaintiff, for example, notes only conclusory opinions describing a deficient disciplinary system, but fails to describe how they are deficient or with what relevance to this

case. The Monell policy requirement, though, is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original). Plaintiff asks the Court to reverse that analysis and nearly revert to a respondeat superior theory, albeit based on separate incidents: because there has been misconduct, there is a deficient system. She fails to identify the deficiency. Tellingly, Plaintiff skirts the actual, distinguishing facts contained in these articles, and resorts to out-of-context quotes evidencing only the opinion of certain observers. Again, the reference to these articles is a smokescreen and Plaintiff is still pleading the Monell elements in conclusory fashion.

  **B.  Plaintiff has Failed to Plausibly Plead Deliberate Indifference or a Causal Connection as Required to Sustain a Municipal Liability Claim**

  In order to prove a Monell claim, a plaintiff must show a policymaker was deliberately indifferent to harms from an offending policy or custom. See, e.g., Vargas v. City of Philadelphia, 783 F.3d 962, 974 (3d Cir. 2015) (quoting City of Canton v. Harris, 489 U.S. 378, 389–91 (1989)). "Deliberate indifference is a stringent standard of fault, requiring that a municipal actor disregard a known or obvious cause of his action." Id. (citations and quotation marks omitted). Generally, this can only be shown where a policymaker was aware of *similar* unlawful conduct in the past but deliberately failed to take precautions against future violations, and that directly led to the plaintiff's injury. See, e.g., Andrews, 895 F.2d at 1480; Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).

  In addition, "[a] municipality is not liable under § 1983 unless the policy or custom is the moving force behind the constitutional violation." Roberts v. Mentzer, 382 F. App'x 158, 167 (3d Cir. 2010) (affirming dismissal of an amended complaint "bereft" of a "policy or custom that

8

directly resulted in the alleged deprivation" of plaintiff's rights.") (citing City of Canton, 489 U.S. at 385).

First, the Court should disregard entirely Plaintiff's allegations concerning staffing. By her own admission, she is referring to staffing issues and their results at entirely different facilities—the Philadelphia Department of Prisons—and makes no allegation about how that relates to staffing or conduct at PPD cells, much less how staffing issues at the Prisons was the moving force of Mr. Perez's death, or even if the PPD unit at issue was, in fact, understaffed.

Plaintiff's incorporation of the Fired, then Rehired article and similar quotes from another article effectively concedes she cannot plausibly allege deliberate indifference for whatever policy or custom he supposedly derives from that article. This article is not about a failure by *the City* to impose discipline—every case it refers to involves a decision by City employees, including, at times, the Police Commissioner, to take disciplinary action against officers. What the article asserts is that such discipline is subsequently overturned by independent arbitrators in arbitration proceedings the City is required by state law to engage in during labor disputes. It offends common sense that the officials are deliberately indifferent to, for example, the individual misconduct they are addressing, when they are imposing discipline but are overturned pursuant to state law. The quotes Plaintiff relies on, reflecting frustration at arbitration outcomes, underscores this point. Commissioner Ramsey's complaint about the "system" was not a reference to the City's disciplinary system, but a reference to the arbitration requirement. To the extent the custom Plaintiff urges the Court to acknowledge is the arbitration outcomes, this simply was not a custom of the City's, and in fact the quotes by Commissioner Ramsey and others evidence the opposite of deliberate indifference to these outcomes.

Similarly, Plaintiff's training allegations add little to save her Complaint. "Establishing municipal liability on a failure to train claim under § 1983 is difficult." Reitz v. Cnty. of Bucks, 125

9

F.3d 139, 145 (3d Cir. 1997). Because a plaintiff will always be able to point to something more a municipality could have done, the standard of fault under this theory is high. City of Canton v. Harris, 489 U.S. 378, 391–92 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." Id. at 390–91. Accordingly, the municipality's deficiency must be specifically identified, closely related to the ultimate injury, and amount to deliberate indifference to its inhabitants' constitutional rights. Id. at 391–92. It is not sufficient that a plaintiff can point "better or more training" that might have avoided the injury—such a claim can almost always be made. Id. at 391.

Plaintiff attempts to do just that, suggesting the "need for more or different training." Compl. ¶ 54. Plaintiff has provided no allegation of how a lack of training here led to the supposed harm, much less was the moving force behind any constitutional harm. Plaintiff's comparisons to the Federal Bureau of Prisons training are nonsensical and cannot, plausibly, give rise to a constitutionally deficient municipal policy or custom. First, Plaintiff's allegations in this regard omit that PPD cell officers are given "initial training" outside of the ten minutes of annual refresher training she describes. Second, it is not plausible—in fact, not true—that the cited ten minutes of training referred to by Plaintiff is the universe of training PPD officers receive that is applicable to their law enforcement duties within a cell block. Of course PPD officers are thoroughly trained beyond ten-minute annual refresher trainings, including in conformity to state requirements. Third, a comparison to the Federal Bureau of Prisons *total* training is comparing apples and oranges. Clearly Bureau of Prisons employees are tasked with a much different role—full time oversight of long-term inmates in facilities providing a variety of service—than PPD cell officers, who oversee short term pre-arraignment detention of arrestees. And much of this training likely overlaps with PPD training not accounted for by Plaintiff in her ten-minute citation—such as use of force and constitutional law. The point, however, is not that these distinctions need to be teased out, but that a comparison to the

Federal Bureau of Prisons is arbitrary (and insincere)—Plaintiff has simply not plausibly alleged what, if anything, was deficient in PPD training that was the moving force of a constitutional violation here. She simply arbitrarily contends more is required, what is exactly what City of Canton deems an insufficiently-pled training-theory of Monell liability.

These distinctions are dispositive. Monell did not create a mechanism where the identification of misconduct by one officer, or even an arbitrary number of officers unilaterally deemed by Plaintiff insufficiently high, imputed liability to the City where a separate officer, at an unrelated time, is alleged to have committed entirely unrelated constitutional violations. Something more about the City's customs is needed. This is especially so where thearticle cited by Plaintiff refers to discipline imposed by the City. To hold that Plaintiff can plead Monell on such allegations creates Monell litigation—under an exceedingly broad theory, no less—every time a plaintiff can plead an underlying constitutional violation (which he would still be free to litigate independent of Monell). This cannot be an outcome intended by the Supreme Court given the special standards for Monell liability and the prohibition on respondeat superior liability under section 1983.

Should the Court find, alternatively, that Plaintiff has sufficiently pled a Monell claim, Defendant respectfully requests the Court dismiss those theories of municipal liability that have been insufficiently pled, so as to appropriately guide discovery.

### C. The Court Should Dismiss All Theories or Claims of an Underlying Constitutional Violation Except for a Claim of Inadequate Medical Care Arising Under the Fourteenth Amendment

"There must be an underlying constitutional violation before Monell liability can attach." Kabaka v. City of Philadelphia, No. 20-6174, 2021 WL 3128685, at *2 (E.D. Pa. July 23, 2021) (citing Mulholland v. Gov't Cty. Of Berks, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Here Plaintiff alleges Perez should have received attention prior to his death. Plaintiff also cites to law concerning inadequate medical care. To the extent Plaintiff's Complaint survives dismissal in its entirety, the Court should dismiss all claims or theories other than a Fourteenth Amendment inadequate medical care claim, since Plaintiff's boilerplate references to the Fifth Amendment, due process and equal protection, are not described in any way to support any other claim. Likewise, for the reason noted above, a pre-trial detainee's claim of inadequate medical care is properly analyzed under the Fourteenth Amendment, not the Eighth Amendment, since the detainee has not yet been convicted of a crime. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

### III.   CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiff's claims against Defendant the City of Philadelphia.

Date:  July 23, 2023

Respectfully submitted,

/s/ Andrew F. Pomager
Andrew F. Pomager
Div. Deputy City Solicitor
Pa. Attorney ID No. 324618
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5446 (phone)
215-683-5397 (fax)
andrew.pomager@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE ESTATE OF ANTONIO ALMANZAR PEREZ BY ADMINISTRATRIX BIANY MORONTA,** | CIVIL ACTION<br>No. 23-2407 |
| Plaintiff, | |
| v. | |
| **CITY OF PHILADELPHIA,** | |
| Defendant | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below Defendant's Dismiss for Failure to State a Claim was filed via the Court's electronic filing system and is available for downloading.

Date: July 23, 2023          Respectfully submitted,

 /s/ Andrew F. Pomager
Andrew F. Pomager
Div. Deputy City Solicitor
Pa. Attorney ID No. 324618
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5446 (phone)
215-683-5397 (fax)
andrew.pomager@phila.gov