IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF ANTONIO ALMANZAR PEREZ by Administratrix Biany Moronta, Plaintiff, | CIVIL ACTION |
| v. | |
| CITY OF PHILADELPHIA, Defendant. | NO.  23-cv-2407 |

<u>MEMORANDUM</u>

HODGE, J.                                                                                           February 10, 2025

I.      INTRODUCTION

This case arises from Antonio Almanzar Perez's arrest on June 22, 2021 and subsequent detention and death at the Philadelphia Police Department Headquarters ("PPD Headquarters"). (ECF No. 1 at ¶¶ 3, 8.) In Count I of the Complaint, Plaintiff Biany Moronta as the Administratrix of the Estate of Antonio Almanzar Perez ("Plaintiff") alleges a claim under 42 U.S.C. § 1983 (Section 1983) and 42 U.S.C. § 1988 (Section 1988) based upon alleged violations of the Fifth, Eighth, and Fourteenth Amendments. (*Id.* at ¶¶ 24–25.) Count II of Plaintiff's Complaint alleges a claim asserting municipal liability against Defendant City of Philadelphia (the "City" or "Defendant"), also pursuant to Sections 1983 and 1988. (*Id.* at ¶¶ 14–16.) Plaintiff also asserts wrongful death (Count III) and survival (Count IV) under state law pursuant to 42 Pa. Cons. Stat. §§ 8301, 8302 (the "State Law Claims"). (ECF No. 1 at 8–10.) As to Counts I and II, Plaintiff seeks damages in excess of $150,000, including punitive damages, plus costs of court and reasonable attorneys' fees. (ECF No. 1 at ¶ 74.) Plaintiff also seeks damages in excess of $150,000 as to Counts III and IV, including punitive damages, plus costs of court. (ECF No. 1 at ¶ 75.)

Presently before the Court is the City's Motion to Dismiss (the "Motion"). (ECF No. 3.) Plaintiff opposes the Motion. (ECF No. 5.) Defendant argues that Counts I and II of Plaintiff's Complaint should be dismissed because Plaintiff fails to plausibly establish the elements of a *Monell* claim, fails to plausibly plead deliberate indifference or a causal connection as required to sustain a municipal liability claim, and improperly references the Fifth and Eighth Amendments in support of its claim of inadequate medical care. (*See generally* ECF No. 3.) Additionally, while the City seeks an Order dismissing the Complaint in its entirety (*Id.* at 1.), the Motion does not argue for dismissal on the merits of Counts III and IV (*see generally id.*). For the reasons that follow, Defendant's Motion is denied.

## II.   BACKGROUND[1]

Plaintiff filed this Section 1983 civil rights action against Defendant on June 22, 2023. (*See generally* ECF No. 1.) The allegations in Plaintiff's Complaint arise from the death of Moronta's father, Mr. Antonio Almanzar Perez ("Perez"), sometime between June 22, 2021 and June 23, 2021. (*Id.* at ¶¶ 1–21.) Perez was arrested on June 22, 2021. (*Id.* at ¶ 3.) At the time of his arrest, he was 68 years old, had a history of drug abuse, had one leg, and used crutches. (*Id.* at ¶ 4–5.) Plaintiff alleges that Perez's "physical condition and appearance, if anything, should have cried out for special attention." (*Id.* at ¶ 7.) Perez was placed in a cell at the PPD Headquarters. (*Id.* at ¶ 8.) He was vomiting and moaning, and his cellmate yelled for guards for hours with no response. (*Id.* at ¶ 11.) On the morning of June 23, 2021, Perez was discovered in his cell by by guards, already deceased. (*Id.* at ¶¶ 9–12.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

### III. LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions to dismiss. A plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 546). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213).

### IV. DISCUSSION

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978). Rather, to establish a *Monell* claim pursuant to Section 1983, a Plaintiff must establish that (1) a constitutionally-protected right has been violated, and (2) the alleged violation resulted from municipal policy or custom, or the deliberate indifference to the rights of citizens. *Id.* at 694–95; *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). To satisfy the second prong

of the *Monell* claim, a plaintiff must show that injury was caused by (1) official city policy, (2) city custom, or (3) the city's deliberate indifference to its constituents' civil rights. *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003). A policy is made when a decisionmaker with final authority to establish municipal policy issues an official proclamation, policy, or edict. *Wright v. City of Philadelphia*, 685 Fed. App'x 142, 146 (3d Cir. 2017) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom, however, is not specifically endorsed or authorized by law. *Id.* Rather, custom stems from a policymaker's acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

For claims based upon deliberate indifference, a plaintiff need not show an unconstitutional policy or custom to succeed on a failure-to-train claim; rather, the plaintiff must establish that a city's failure to train its employees "reflects a deliberate or conscious choice." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). Further, a plaintiff must show that "a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Moreover, deliberate indifference occurs "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . ." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In this situation, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* The Third Circuit has held that a plaintiff's failure-to-train claim can survive a motion to dismiss where plaintiff demonstrates that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult

4

choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Estate of Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

      **A.**      **The City's Motion to Dismiss Plaintiff's Claims Pursuant to Sections 1983 and 1988 is Denied.**

The City presents three bases for dismissal of Plaintiff's *Monell* claims. First, Defendant asserts that Plaintiff's cumulative, conclusory allegations concerning generalized deficiencies fail to plausibly establish the elements of a *Monell* claim. (ECF No. 3 at 8.) Second, that Plaintiff has failed to plausibly plead a deliberate indifference of a causal connection as required to sustain a municipal liability claim. (*Id.* at 10.) Finally, the City asserts that, to the extent Plaintiff's Complaint survives dismissal in its entirety, the Court should dismiss all claims or theories other than Plaintiff's Fourteenth Amendment inadequate medical care claim because (1) Plaintiff's references to the Fifth Amendment are boilerplate and (2) a pre-trial detainee's claim of inadequate medical care is properly analyzed under the Fourteenth Amendment rather than the Eighth Amendment because the detainee has not yet been convicted of a crime. (*Id.* at 14 (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).)

Plaintiff counters that it has met the pleading standard set forth by *Monell* by alleging "a multitude of instances when the City was indeed 'deliberately indifferent,' primarily through its failure to adequately train, supervise[,] and/or discipline its officers." (ECF No. 5 at 3.) To support its position, Plaintiff points to two news articles attached to its Complaint "which summarize the multitude of relevant cases far better than Plaintiff could hope to as "more than enough to meet the high burden of a [m]otion to [d]ismiss." (ECF No. 5 at 4 (citing ECF No. 1-5, ECF No. 1-6).) Plaintiff also alleges that the City's Motion should be denied because "Plaintiff now knows that the City was hiding a great many cases from the public" in order to prevent plaintiffs "from being

5

able to prove a policy and custom of deliberate indifference." (ECF No. 5 at 5.) Finally, Plaintiff asserts that the City's Motion should be denied because the Complaint "does connect Defendant['s] policy and practice of deliberate indifference to specific policy makers including Police Commissioner Outlaw."[1] (ECF No. 5 at 6.)

        1.        **Plaintiff Sufficiently Alleges a Fourteenth Amendment Violation.**

Claims of inadequate medical care by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. *Erdreich v. City of Philadelphia*, et al., No. 18-2290, 2019 WL 1060051, at *6 (E.D. Pa. Mar. 6, 2019) (citing *Hubbard v. Taylor*, 399 F.3d 150, 158, 166–67 (3d Cir. 2005)).[2] To state a Fourteenth Amendment claim of inadequate medical care, a plaintiff must allege that a defendant acted with deliberate indifference to his serious medical needs. *Id.* (internal citations omitted). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Erdreich*, 2019 WL 1060051, at *6 (E.D. Pa. Mar. 6, 2019) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). Additionally, a serious medical condition is one for which the denial of treatment causes "unnecessary and wanton infliction of pain" or permanent disability or loss. *Id.*

"Deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law." *Erdreich*, 2019 WL 1060051, at *6 (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (internal citations and quotations omitted). Establishing deliberate indifference requires demonstrating that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*,

---

[2] While the Court denies the City's Motion in its entirety, thereby allowing Plaintiff's claims to proceed, the Court does find that Plaintiff's claims are properly analyzed under the Fourteenth Amendment rather than the Fifth or Eighth Amendments.

511 U.S. 825, 837 (1994)). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care, the deliberate indifference standard has been met." *Id.* (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987)). The Third Circuit has found that the deliberate indifference standard is satisfied on an inadequate medical care claim:

> [W]hen prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment

*Id.* at *6–7 (quoting *Whooten v. Bussanich*, 248 Fed. App'x 324, 326–27 (3d Cir. 2007).

The Court finds that Plaintiff has sufficiently pled a constitutional violation based on inadequate medical care. Plaintiff alleges that Perez had a history of drug abuse, had one leg, and that his "physical condition and appearance, if anything, should have cried out for special attention." (ECF No. 1 at ¶¶ 4–5, 7.) Moreover, Perez was vomiting and moaning, and his cellmate yelled for help "for hours" to no avail. (*Id.* at ¶¶ 9–12.) While Plaintiff's Complaint lacks specificity as to Perez's condition at the time of his arrest, the details that are presented and the fact that Perez died within less than twenty-four hours of his arrest sufficiently support Plaintiff's allegation that it should have been apparent that Perez required medical attention. Based upon the facts presented, the Court finds that the failure to respond to the pleas of Perez's cellmate constitutes a denial of reasonable requests for medical treatment. Based upon the facts alleged by Plaintiff, there is no question that Perez was exposed to undue suffering. Moreover, the City does not contend that it was necessary to delay treatment of Perez for non-medical reasons. Finally,

because of the failure to answer the calls of Perez's cellmate, Perez was prevented form receiving treatment for his serious medical needs.

Deliberate indifference requires more than an inadvertent failure to provide medical care. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Absent allegations that the City acted with "conduct that included recklessness or a conscious disregard of a serious risk," Plaintiff cannot plead a plausible violation of his Fourteenth Amendment rights. *Wilson v. Jin*, 698 Fed App'x 667, 671 (3d Cir. 2017) (internal citations omitted). Here, Plaintiff has sufficiently alleged that the City acted with "conduct that included recklessness or a conscious disregard of a serious risk" by ignoring warning signs based upon Perez's condition upon his arrest, ignoring the cries for help from Perez's cellmate, and failing to take notice of Perez vomiting for hours.

The Court therefore finds that Plaintiff has sufficiently alleged a Fourteenth Amendment violation in support of its claims pursuant to Sections 1983 and 1988.

### 2. Plaintiff Pleads Facts Sufficient to Show That the City Was Deliberately Indifferent to Perez's Civil Rights.

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Nevertheless, "in certain situations, the need for training can be said to be so obvious, that the failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014). "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights" *Id.* at 223–24.

In its Complaint, Plaintiff alleges that the City failed to "adequately hire, discipline, train, supervise and/or otherwise direct employees." (ECF No. 1 at ¶ 33.) Plaintiff also references two Philadelphia Policy Directives with guidance that: (1) every person taken into custody by the PPD is required to be given a "quick medical evaluation" upon their arrest, (2) detainees who appear to be under the influence of drugs are required to be placed in a holding cell, with inspection every ten minutes, and (3) anyone intoxicated and in a "semi-conscious state" should be brought immediately to the hospital for a medical evaluation. (ECF No. 1 at ¶¶ 14–16 (citing ECF Nos. 1-1, 1-2.) Had these PPD policies been followed, Plaintiff should not have been left in his cell vomiting for hours without any inspection or medical attention. Therefore, even without considering any pattern or practice evidence Plaintiff has presented, Plaintiff has sufficiently pled facts that support a claim under *Monell* based on this single incident alone. *See Wichterman v. City of Philadelphia et al.*, No. 2017 WL 1374528 , at *4 (E.D. Pa. Apr. 17, 2017) (citing *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223–24 (3d Cir. 2014) (holding inmate-on-inmate assault was predictable result of failure to train correctional staff in de-escalation techniques); *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 575, 580 (3d Cir. 2004) (permitting failure to train claim involving single incident of assault on juvenile facility detainee based on lack of training to identify potential victims of physical attack); *Koukos v. Chester Cty.*, No. 16-4602, 2017 WL 511634, at *9 (E.D. Pa. Feb. 7, 2017) ("Finally, Koukos alleges that the County's failure to establish appropriate policies and procedures for the monitoring and treatment on inmates undergoing detoxification [from opiates] after admission in turn led to the failure of the individual Defendants to adequately monitor, assess, and treat him. These allegations are sufficient to state a claim.")

9

For these reasons, Plaintiff has sufficiently stated a *Monell* claim, and the City's Motion is denied as to Counts I and II. Since the Motion is silent on the merits of Counts III and IV, the Court declines to dismiss those Counts at this stage of the proceedings.

## V.   CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is denied. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**
_____
**HODGE, KELLEY B., J.**

---

[1] The Court notes that while Plaintiff purports to counter arguments made by the City that "Plaintiff has failed to allege a pattern of similar misconduct and is proceeding under a single incident theory" and that "the Complaint fails because it does not allege conduct by a decision maker under *Monell*" but these arguments are not contained within the City's Motion. (ECF No. 5 at 6.)